under the Criminal Justice Act. It's my pleasure, your honor. Thank you. Judge Colleton, Judge Wollman, Judge Kelly, good morning. My name is Stephen R. Morrison, and I represent the appellant Rocky Mayfield. In this case, Rocky Mayfield's trial attorney, Sam Jurassic, failed to discover a key fact that the A51 certification was invalid. In time for Rocky to make that plea, based on an incorrect evaluation of the law and his sentencing exposure that arose because Mr. Jurassic failed to discover an eminently discoverable fact, Rocky Mayfield decided to go to trial, even though he and Mr. Jurassic knew they would be highly likely to lose. As a result, Mr. Mayfield received a higher sentence and more counts of conviction than he would most probably have received had he pled guilty. And I'd like to get right down to the fact of ineffective assistance of counsel, and I think you can prove, I think we can prove ineffective assistance based on six pages in the appendix. First, as for ineffectiveness on page 205, Mr. Jurassic admits that he didn't know the A51 was invalid. In time for the plea decision, page 132, Jurassic expresses the incorrect belief that even with acceptance, the mandatory minimum for Mr. Mayfield was 20 years, thus valuing acceptance of responsibility at zero. That's the ineffectiveness. As far as prejudice goes, if we look back to page 205, Jurassic admits that if he had known the A51 certification was invalid, the situation would have been different. And moving on to page 144, Jurassic firmly believes that without the A51 enhancement, Mayfield would have pleaded guilty. Now, how do we know that the court would have been likely to sentence Mr. Mayfield to somewhere south of the 240 months he received? What about Mayfield? What did he say about whether he would have accepted a plea if the 240 minimum weren't applicable, but the guideline range was possibly 210 to whatever? Well, he essentially said the same thing, but I'll make it as wide as Mr. Jurassic said, which was, had we known the A51 was invalid, we would not have been here today. The decisions would have been different. We would have pled guilty. Well, where is that in the record? Do you know? You have a citation? It would be at the sentencing hearing when Mr. Mayfield allocated to the court. Well, he didn't present evidence in this collateral proceeding? In the 2255? Well, he presented emails from Sam Jurassic saying, had we known the A51 would have been, was invalid, our decisions back in January would have been different. I'm asking whether Mayfield, he never testified in this 2255 proceeding? That's correct. That's correct. He filed pro se, and he did actually have the wherewithal to present evidence. The judge never made a finding of whether he believed, well, first Mayfield didn't testify and the judge then didn't make a finding whether he believed him that he would have pleaded or accepted a different plea offer. Well, that gets me to my second point, your honor. The first point is there's ineffective assistance of counsel here. I think it, well, it's subject to de novo review. I think you can find it on the record, but there's also the fact that the district court clearly erred in its factual findings regarding what Mayfield's issue was. In its order denying Mayfield's 2255, he interpreted Mayfield's claim that Jurassic should have filed a challenge to the 851, formally filed the challenge to the 851 prior to sentencing. Now, Mayfield's initial 2255 motion contained a lot of allegations, and I can point to the language in that allegation that presents the issue we're presenting today. But in Mayfield's reply to the government's response to his 2255 motion, Mayfield makes very clear that he is not challenging Jurassic's failure to formally challenge the 851. He's making clear that the ineffectiveness arose when Jurassic didn't find out about the 851's invalidity, didn't inform Mayfield that it was invalid, which- In time, right? Because it was determined at the time of sentencing. Absolutely, your honor. That's correct. But the ineffectiveness arose because he didn't discover, Jurassic didn't discover the 851 was invalid in time for Mayfield to make that critical decision. Yeah, I understand. So you're saying the judge never grasped that issue. He clearly- So what should we do about- Well, it's not a factual finding. I mean, it's a question whether he answered the right legal question. But anyway, what do you think we should do about it? In the first instance, your honor, you should find that there was ineffective assistive counsel here, and you should find that Mayfield was prejudiced. How can we do that if the district court never addressed the issue and never addressed, for example, whether Mayfield would have accepted a plea offer that was- The only difference is it would have been the government estimating 210 to 262 instead of 240 to 262. Well, respectfully, it's not the government's interpretation of the guidelines. It's the I know, but you can't use the fact that the judge later found different levels to say what Mayfield would have done at the time of the plea offer. Well, Jurassic's emails indicate his agreement with Mayfield that had they known the 851 was invalid, Mayfield would have pleaded guilty. And had Mayfield pleaded guilty, the district court calculated his guidelines range, if he had received three points for acceptance of responsibility, at 168 to 210 months. That's on page 133 of the appendix. Now, how do we know that the district court would have sentenced within that range? Well, first of all, that 168 to 210 is an after-the-fact estimate, knowing what the district court did at the sentencing hearing, right? Because the district court didn't find the same quantities that the government was recommending in the plea offer. Well, and maybe I'm misinterpreting what you're asking, Your Honor, but that 168 to 210 was what the court calculated at the sentencing hearing had Mayfield accepted responsibility, had he been able to as a result of a plea. But the parties didn't know at the time of the plea negotiations whether the district court would find the quantity that the government was proposing. So I don't think that in analyzing what would have happened hypothetically if the lawyer had realized the mandatory minimum didn't apply, you have to look at it from the perspective of what the people knew at the time of the plea negotiations, don't you? You can't take into later. Well, I know there's this obvious hesitance, justifiable hesitance to engage in the wisdom of hindsight to revisit these ineffectiveness claims, but this is not one of those cases. At the time of Mayfield's plea, he was laboring under the incorrect conclusion that acceptance of responsibility would give him three points off his guidelines range, but that didn't matter because his mandatory minimum was 20 years. Well, it wasn't. And had Jurassic done his job and looked up to determine whether that 851 was invalid, Jurassic would have advised his client that your mandatory minimum is actually 10 years. And so the value of accepting responsibility, getting those two or three points off your is somewhere north of zero, but in the event Mayfield thought it was zero. And in Mayfield's 2255, he provides emails from Sam Jurassic admitting, one, that Sam Jurassic didn't know the 851 was valid when he could have, and two, admitting that had Mayfield known it was but also two counts of conviction under the anticipated plea and not the four he received. What would the remedy be here? Because the plea agreement included the 851 that now we know, after the fact, was not a properly supported 851. So how do you put him back in a position that is fair? Ideally, you vacate the conviction, take it back to prior to the determination whether to plead guilty. You could order the government to offer the plea again. But that plea has an 851 in it. Well, it would have to not have the 851 in it. So that's where I'm getting at. How much can you direct? Even if it had the 851 in it, we know now that that's invalid. So on remand, I would be able to advise Mr. Mayfield that it is invalid. How do you know the government would have offered it without the mandatory minimum? I suppose I don't, and the government can address that. But having done this for 12 years in federal court, it's the normal course that governments offer plea deals. That's why we have a 97.2% plea rate. Of course, in this case, I certainly don't know. Short of that remedy, Your Honor, I would ask this court to remand, to vacate the sentence, not the conviction, and remand to district court either for a full evidentiary hearing or for more complete briefing so that I can attempt to correct the district. Do you think we should have a hearing that would include the district court making findings on whether the government would have offered a plea agreement without the mandatory minimum and whether Mayfield would have accepted it if the government was estimating a range of 210 to 262? Well, I think it's established— Would that be an appropriate remedy? I think if you remanded for further briefing or for an evidentiary hearing, all of that could and should come out. However, I think it's clear on the record that Mayfield would have accepted the plea. I think it's clear on the record that Jurassic was ineffective. And I think it's clear on the record that the court would have imposed a lower sentence. I mean, we all know—maybe we're not supposed to say this—but we all know that there's a trial penalty. We all know that when people plea, they get lower sentences. And we all know that in federal court, there's a plea rate of 97.2 percent. There would have been a plea in this case. I see that I have only about three minutes left, which I would like to reserve for rebuttal. You may. Mr. Andrew, we'll hear from you. Thank you, Your Honors. As was mentioned, this court is reviewing this issue de novo, and I'd like to hop in right away to one of your questions that you asked him about. And his response was that there was zero value to him accepting responsibility and pleading guilty from the United States' plea offer. That's simply not true. The guideline range in the plea offer was 292 to 365 if he went to trial. So that's right there, down to 240. That is 52 months that he could have received if he would have accepted that. So to say that there was no value to accepting responsibility, that's simply not true. Obviously, the two prongs here are whether there was ineffective assistance of counsel and whether it caused any harm. The government concedes that neither happened here. When we look at the initial issue of whether this 851 was appropriate, obviously, in hindsight, it should not have been certified. It's barely hindsight because everybody caught it by the time of sentencing. And if I understand it, when the defense attorney raised it, the AOSA, it wasn't contested, in other words. Both parties came to the court and said, nope, this isn't a validly supported 851. Both parties did agree. After quite a bit of research, though, when you look at the government's 2255 response motion before the district court in Exhibit 4, or excuse me, Exhibit 2, is the certified judgment, which was at issue here. If you look at the front page of that certified judgment, it is methamphetamine paraphernalia. It says right on there, felony. That was what was provided in discovery. That's what was in the original 851 motion. By everything on the surface, it appeared that this was a certifiable prior conviction. It was from around 2002, when you get down to the dates of when he was arrested and when he was convicted, right in that time frame within the Arizona. So this no longer would make it a certifiable conviction. So it's not like this was some misdemeanor conviction that was on its face, invalid. This was in the discovery, as I said, in Exhibit 2 of the government's response. It's a felony conviction for methamphetamine paraphernalia. Is it in the record whether the previous attorney actually investigated this issue earlier? In other words, looked into it, couldn't figure it out, so went ahead with the sentencing, and now it doesn't count? Or was it, well, I just didn't even look at it until sentencing, and now once I actually paid attention to it, we figured it out? I don't think it's in the record as to exactly what steps Mr. Jerezik went through and when he discovered that. I do think that, as mentioned, obviously the 240 is out there, and it's something that's being considered by the parties, but it's not controlling on what the actual guidelines were here, both in the plea was found to be. So when you look at that... Wait, say that again. It wasn't controlling. What do you mean it wasn't controlling? The guideline range, as the government would have asserted, was when we look at what they're requesting here is that we re-offer the plea agreement. If we re-offered the plea agreement, the guideline range still would have encapsulated that 240 months. What do you mean encapsulated? The range would have been 210 to 262. That 240-month sentence that he received would have been right in the middle of that guideline range. Yeah, but it wouldn't have been the bottom. It wouldn't, but as we know... How do we know whether he would have said, well, if my recommended range is as low as 210 and the government agrees to recommend the 210, and I can argue for my third level, which would take it even lower, maybe that is a deal worth taking as opposed to the deal where I know my bottom is 240. I think we can look at what the actual harm would have been. The government at the sentencing in this case, the low end was 235. The government recommended 235 at sentencing. The judge went above that. The judge said, looking at these facts, looking at what's going on here, criminal history, the offense conduct, 240 is appropriate. So the judge went above the government's recommendation. So I think even if you look, if we try to go hindsight, saying everything Monday morning quarterback, looking at it that way, the judge still said the low end of the guideline range here is not appropriate. 240 is what's appropriate. That's what... But that was after he'd gone to trial and didn't get acceptance of responsibility. If he pleaded, he would have been starting at a lower range. And so why should we assume the judge would have given him 240 if the range, the top of the range was below 240? The top of the range wouldn't have been below 240 if he would have accepted responsibility, though, Your Honor. It would have been 210 to 268. So that 200... No, that's under your, that was under your guideline calculations at the time of the plea offer. But it turns out the district court didn't with your guideline calculations and sentenced him at a lower quantity. And so he would have been below 240 with acceptance with the judge's drug quantity. And I think if you look at... Isn't that right? Yes. I think if you look at Exhibit 4, though, it's an unfortunate thing of hindsight again. Where's Exhibit 4? In the government's response to the 2255... Well, what page of the appendix? I'm sorry. I do not have that in front of me, Your Honor. Could you speak into the microphone? Maybe you want to raise the... Yes. If it can be raised. I'll try to stand closer to it. Well, it doesn't, it's not real helpful if you cite district court attachments to district court documents in the appeal. That's why we have an appendix, usually. I apologize. Joint appendix. Yes, I apologize, Your Honor, for not having... The government's response to the 2255 motion, Exhibit 4, which is the plea correspondence between Mr. Jurazic and Mr. Hagler. It's from there that the weight is 34 that was in there. When the PSI writer found the 32, the government did not object to it. It's not in the record why the government didn't object to it. But I think the evidence that was presented shows that it also... I think you also look at the district court's findings on the 2255 motion and the court cites to the sentencing where the court says there's certainly evidence presented that a plus four would apply here. I'm giving you a break, Mr. Mayfield. Again, we're looking back, you know, 20-20 hindsight trying to say that the court would have still found plus two instead of plus four if these other things didn't apply. I don't think we can say that. We're looking back, basically, cherry-picking the best findings that support Mr. Mayfield getting that lower base offense level while ignoring other things. So I think that is where we're engaging in a little bit too much of looking back and second-guessing what was decided. The requested relief by the appellant in this matter is that we re-offer the plea agreement. What's now... What that plea agreement entailed was that they would agree to these base offense levels. It seems like it's almost being changed now to say that, well, we wouldn't have signed the plea agreement. We would have entered an open plea and we would have challenged all these things and this would have happened and that would have happened. Again, I don't think there's anything in the record to support that. If what they're saying would have happened, that he would have accepted that plea agreement, these would have been the base offense levels that would have been If it's ineffective assistance and there's prejudice and there's the remedy, is that issue, what would the remedy be in this particular situation given where we are now and what has happened through the sentencing just on some of the issues you've raised right here? I do think that's an important issue. I don't think there's any reason to vacate the conviction here. I do think, again, that it's not appropriate to remand, but if it was, I believe it would be, the court would, this panel would have two options to either remand for consideration of whether the minus three should have applied in light of what was talked about in the court's order or I believe you could direct the court to apply a minus three to the base offense level that was found and sentenced in accordance. That would be the remedy? So just go back to certainly it's an option to do that. I think, again, it's an option to do what? To, as she said, send it back and have us re-offer the plea agreement. I think that's something the court could do. I think what I would say would be appropriate in that situation. If this court ordered us to re-offer that plea agreement, that's where we end up with the 210 to 262 I didn't understand this plea offer to be a binding stipulation. The way that the plea agreement is listed out is that the base offense levels are agreed upon, that either party may ask for a sentencing variance, but that the base offense levels are agreed upon. Where does it say that? Are you talking about the email from Hagler to Goresick? Yes. All it says there is Hagler says it appears that the guideline analysis will be as follows and then he goes through his calculations, but where does it say that this is a proposed stipulation that Mayfield would have to accept? I apologize, Your Honor, because it never did get to this stage of a formal plea agreement that would have been drawn up. I can just say that it's the standard practice of plea agreements within the District of North Dakota that the base offense levels are agreed upon unless explicitly stated otherwise. Well, then that would be another factual question, I suppose, wouldn't it, for the district court whether the government would have offered and what they would have offered and whether Mayfield would have accepted it. And again, I think we're getting too much into hindsight saying that he would have pled. I mean, there's this argument that this trial was just a foregone conclusion. Mr. Morrison said, they're highly likely to lose. Well, I would say that, yes, this was a strong case, but this was no slam dunk. There was no benefit to him going to trial. We have cases all the time where the guideline range is at the minimum mandatory where the defendant has nothing to lose and still pleads guilty because the evidence is overwhelming. Well, what about the Mayfield statement at the moment, his immediate response in learning what had happened with this 851 was, I wanted to take a plea? I would posit that both it isn't immediate and that it is a self-serving statement. It's months later after we've written the PSI, we've withdrawn the 851, he's talked with his attorney about it. It's buyer's remorse. It's, I wouldn't have done this. I would have gotten that lower sentence if I could have done that. So your view is that there's not enough in the to determine whether or not he would have taken. And I don't think there, I don't know that there ever can be enough because we can never totally get inside the defendant's head as to why they decided to take his trial. But I think we can look at what the government's offer was and what he was looking at if he accepted the plea offer. As mentioned right away, the government's plea on the organizer leader. As the judge mentioned in his order, he said, I'm giving you a break and only giving you the plus two instead of the plus four. Obviously the government often in their plea agreements has to give some type of carrot to get them to accept the plea offer. Here we have that we were only going to advocate for a plus two instead of a plus four if he accepted the plea agreement. So not only was that the low end of the plea agreement was going to be 292, but if he went to trial, the government could still ask for a plus four and it could even go higher. So there was some incentive to the plea agreement in and of itself. And there was the additional incentive of the minus three for acceptance of responsibility, which would have brought it down. Well, again, what is the government's position on what we should direct the district court to do or anything? The government's position. What remedy should we I don't believe there is any remedy because one, I don't believe that there was an effective assistance of counsel and two, that there was no harm because as mentioned, the sentencing guidelines would have lined up with the actual sentence that he would have received. Well, if the district court, in other words, can we rely upon our, I would have given the same sentence anyway, so it doesn't matter what the guideline was. Well, I think we'd look at that when we're looking at the harm factor, whether there was any harm here. But to answer your question as if it is I would say that it'd be with, to give the court, to tell the district court to consider whether the minus three should have applied here and what the sentence should be not to vacate the conviction. And again, in terms of, again, what would our direction be? To remand this to the court for resentencing. Upon the correct guideline calculation? In consideration of whether the minus three should have applied. Applied to what range though? I would say the range that was given by the sentencing court at the original time. If that is what the court here is going to do, is to remand it, I would say consistent with the court's findings on the basic. It's inconsistent with what you said five minutes ago because then you said the only way we would have offered the And that would have been a higher range than what the court found. So I don't know why you're resisting the nature of these ineffective assistance claims is you have to go back and project what would have happened when you do the prejudice analysis. So I'm just wondering why we, if we have to get to that, we don't just have the district court make some findings about what would have happened or what was reasonably likely to have happened. If I'm hearing correctly, correct me if I'm wrong, is to send it back down with the original plea offer in place again and have the district court go from there. I think that's certainly an option. I don't think that would be incorrect or not plausible as a if this was going to be remanded. It was just the government's position would be that it be remanded with for the court to consider whether or not the minus three applies. Seeing my time has expired, are there any other questions? Seeing none, we'll thank you for your argument. Mr. Morrison, we'll hear from you on rebuttal. Yes, your honor. Thank you. I agree with the government that there was a benefit to my client pleading and that there was a benefit to him receiving the two or three points levels off for acceptance of responsibility. The government said it. Totally agree with it. The problem is, Jurecic didn't know that those two things had value. And so based on his ignorance of the law, based on his ignorance of the 851 certification being invalid, he advised his client, let's roll the dice and go to trial. Well, he knew there was value that in getting from 292 to 240, didn't he? He just didn't know that the value could go even lower than 240. Well, I suppose that's true, your honor. But the way Jurecic advised his client, and this is right there in the email, it's the same either way. It's going to be 20 years no matter what. Now, certainly the court could have sentenced Mayfield to 300 months or even more, arguably. But Jurecic's advice was, we might as well go to trial. Let's roll the dice. So there absolutely was a benefit to pleading and getting the acceptance of responsibility. But because of Jurecic's ignorance of the law, Mayfield evaluated that value at zero. You know, the government also talks about quite a bit of research had to go into determining whether this Arizona crime was a qualifier. And, you know, on page 15 of the government's red brief, the government notes the law is confusing. But there's no the law is confusing exception to Strickland. However hard it was to determine whether it was valid, Jurecic had the duty to do so. I would also agree with the government on one other point, which is if this court does remand, the appropriate range should be 168 to 210. Let's just take what the district court said the range would have been had Mayfield received. I want to understand that. Maybe I'm wading into a marsh that I shouldn't have. No, I mean, if that's your position, I want to understand your position. I heard the government say that the only way they would have offered a plea agreement was with a stipulated guideline range, and they were operating on a different drug quantity. So your man would have had to decide whether to take it with that stipulation and then go for three levels off of that. Or he could have proceeded without that agreement and litigated the quantity. That's what he's saying. Now we'd have to have a finding as to whether that's what the government would have done. I suppose, Your Honor, but the quantity here was never really in question. The quantity here didn't drive this ineffectiveness. And, well, I see my time is up, and I know we could go on like this forever. Probably, yeah. We probably could. Probably could. Thank you for considering this case.